## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AUNDRIA ARLANDSON, et al., on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**HARTZ MOUNTAIN CORPORATION, SERGEANT'S PET CARE PRODUCTS, INC., and SUMMIT VETPHARM, LLC,**<br><br>**Defendants.** | Civ. No. 10-1050<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendant Hartz Mountain Corporation ("Hartz"), Sergeant's Pet Care Products ("Sergeant's"), and Summit Vetpharm, LLC's ("Summit") motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motions to dismiss is **GRANTED** in part and **DENIED** in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Consolidated Amended Complaint ("Complaint") brings a putative class action on behalf of themselves and other purchasers and users of "spot on" flea and tick treatments manufactured by Defendants Hartz, Sergeant's, and Summit. Defendants

1

all manufacture "spot on" flea and tick control products ("Products") that are sold over

the counter and contain Pyrethrin or Pyrethrin derivatives.  (Compl. ¶ 177.)  "Spot on"

flea and tick treatments are ones that are applied directly to one or more localized areas

on the body of the pet.  (Compl. ¶ 185.)

On May 5, 2009, as updated January 10, 2010, the Environmental Protection

Agency ("EPA"), which regulates the safety of pesticides, issued an advisory, reporting

that it is "intensifying its evaluation of spot-on pesticide products for flea and tick control

due to recent increases in the number of reported adverse reactions in pets treated with

these products." (Compl. ¶ 185.)  Additionally, on August 3, 2009, the national Humane

Society of the United States ("HSUS") released public comments to the EPA specifically

addressing Defendant Hartz, stating that "the HSUS continues to receive complaints

regarding Hartz flea and tick products more than any other manufacturer." (Compl. ¶

187.)

Plaintiffs allege that Defendants' Products are unsafe because they sickened and,

in some cases, killed their pets.  (Compl. ¶ 2.)  The Complaint includes 28 named

Plaintiffs from various states whose pets were allegedly harmed after being treated with

flea and tick products sold by Hartz, Sergeant's or Summit.  Ten Plaintiffs residing in

seven different states are alleging claims against Hartz ("Hartz Plaintiffs"): Laura Bouse

(California), Violeta Cruz (Georgia), Stacie Gibbs (Pennsylvania), Deanna Marsocci

(North Carolina), Rich Parsons (California), Barbara Pennell (North Carolina), Michael

Powell (Arizona), Kristy Pruitte (North Carolina), Richard Swanson (New York), and

Lisa Tuyes (Louisiana).  Fourteen Plaintiffs residing in nine different states are alleging claims against Sergeant's ("Sergeant's Plaintiffs"): Aundria Arlandson (Minnesota), William and Gretchen Brynteson (Minnesota), Melanie Canceli (California), Linda Carden (Tennessee), Lisa Dachenhausen (New York), Claire Enkosky (New York), Stephanie Grandy (Illinois), Bonnie Kyrros (Oregon), Tiffany Murphy (California), Miriam Poore (Florida), Kathy Slivan (Pennsylvania), Shelby Touchstone (Florida), and Marie Zolnowski (New Jersey).  Four Plaintiffs residing in four different states are alleging claims against Summit ("Summit Plaintiffs"): Lisa Dougherty (Maryland), Kathleen Fedrow (California), Ywanna Longmire (Virginia), and Catharine Vexler (Texas).

Plaintiffs, on behalf of themselves and other purchasers of Defendants' products, bring the following causes of action: (1) breach of implied warranty of merchantability (Count One); (2) breach of express warranty (Count Two); (3) violation of the New Jersey Consumer Fraud Act ("NJCFA") against Defendants Hartz and Summit[1] (Count Three); and (4) unjust enrichment (Count Four).  Specifically, Plaintiffs seek economic damages based upon the difference between the amount they paid for the product and the diminished (or nonexistent) value of the product as a result of it being unsafe to apply to their pets.[2]

---

[1] Plaintiffs only allege their NJCFA claim against Hartz and Summit as they are the two Defendants headquartered in New Jersey.

[2] In addition to this action, multiple putative class actions have been filed against various other "spot on" flea and tick treatment manufacturers in this Court.  The Court has issued parallel

## II.     DISCUSSION

### A.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[3] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).   Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*,

---

opinions on the pending motions to dismiss in the following flea and tick treatment cases: *Smith v. Merial*, Civ. No. 10-439; *McDonough v. Bayer Healthcare*, Civ. No. 10-442; *Snyder v. Farnam Companies*, Civ. No. 10-1391; and *Johansson v. Central Garden and Pet Company*, Civ. No. 10-6372.

[3] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..."  *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## B.    Sergeant's Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint where the court has no personal jurisdiction over the defendant.  Sergeant's, a Nevada Corporation with its principal place of business in Omaha, Nebraska, contends that the Court does not have personal jurisdiction over it.  (Sergeant's Moving Br. at 3.)  A district court may exercise personal jurisdiction over a nonresident of the forum to the extent authorized by the forum state's long-arm statute.  *See Provident Nat'l Bank v. California Fed. Sav. Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987) (citing Fed. R. Civ. P. 4(e)).  New Jersey's long-arm statute permits an exercise of jurisdiction to the fullest

5

extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Nicholas v. Saul Stone & Co., LLC*, 224 F.3d 179, 184 (3d Cir. 2000); N.J. Ct. R. 4:4-4. Thus, courts in this state may exercise personal jurisdiction over nonresident defendants if they have established "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction may be either general or specific to the particular litigation. General jurisdiction only exists where the defendant has continuous or systematic contacts with the forum. Sergeant's is a Nevada corporation, with its principal place of business in Nebraska, and has no offices, bank accounts, assets, or employees in New Jersey. (Sergeant's Moving Br. at 3.) Sergeant's connection to New Jersey alleged by Plaintiffs is through its products being sold and marketed in the state and purchased by Plaintiff Marie Zolnowski. (Pls.' Opp. Br. at 48.) These contacts likely do not constitute "continuous or systematic contacts" with New Jersey so as to support general jurisdiction.

Regardless of whether general jurisdiction exists, however, the Court finds that specific jurisdiction over Sergeant's is supported here. Specific jurisdiction is established where the defendant has sufficient "minimum contacts" with the forum, and the cause of action arises directly out of those contacts. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

6

Minimum contacts are established if "the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protection of its laws." *Hanson*, 357 U.S. at 253 (citing *Int'l Shoe*, 326 U.S. at 319). Specific jurisdiction is not satisfied, however, where the unilateral acts of the plaintiff alone bring the defendant into the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). Rather, a plaintiff must show "a deliberate targeting of the forum," *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007), such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. Finally, the burden is on the plaintiff to establish personal jurisdiction once challenged. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). However, until an evidentiary hearing is held, Plaintiffs "need only establish a prima facie case of personal jurisdiction," and are "entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.)).

Plaintiffs have alleged that Sergeant's products are sold in pet stores within New Jersey, and that one of the Plaintiffs, Marie Zolnowski, is a New Jersey citizen that purchased the product in New Jersey. Sergeant's chose to have its products sold by New Jersey retail stores, and was aware that its products would then be sold to consumers in New Jersey, and has therefore purposefully availed itself of the "privilege of conducting activities" within New Jersey. *See Hanson*, 357 U.S. at 253. Furthermore, since the Sergeant's Plaintiffs' claims arise out of the purchase of Sergeant's flea and tick control

products, and Plaintiff Marie Zolnowski made her purchase in New Jersey, the claims "arise out of" Sergeant's minimum contacts within New Jersey. As such, this Court has specific personal jurisdiction over Sergeant's.

Sergeant's further argues that even if specific jurisdiction exists as to Plaintiff Marie Zolnowski's claims, it does not exist as to the claims of the other named Plaintiffs or the putative class outside of New Jersey residents. Specific jurisdiction is evaluated on a claim-by-claim basis. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001)). However, there is no requirement that the evaluation be done for each plaintiff individually. *See Miller Yacht Sales*, 384 F.3d 93 (holding that specific jurisdiction must be claim- and defendant-specific, but not addressing whether it must be plaintiff-specific). Since Plaintiff Marie Zolnowski's claims arise out of Sergeant's contacts with New Jersey, and since all Plaintiffs in this action are joining in the same causes of action, the specific jurisdiction supported by Plaintiff Marie Zolnowski's claim extends to the claims as made by all Plaintiffs.

Finally, Sergeant's moves in the alternative to transfer the claims against Sergeant's to the District of Nebraska. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goals of 28 U.S.C. § 1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612 (1964).  The burden is on the moving party to establish the need for a transfer.  *Jumara v. State Farm Inc. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).  While a transfer to the District of Nebraska may be more convenient for Sergeant's, it will not prevent the waste of time, energy and money. Currently pending in this Court are multiple other pending actions asserting similar claims against manufacturers of "spot-on" flea and tick products.  One of these other pending actions, *Johansson v. Central Garden and Pet Company*, Civ. No. 10-6372, was transferred to this Court from the Northern District of California to prevent the waste of time and energy in having such a similar action pending in another District.  As such, the Court finds the claims against Sergeant's should not be transferred out of this Court, and therefore Sergeant's motion in the alternative to transfer the case to the District of Nebraska is denied.

###   C.   Choice of Law Principles

Since Plaintiffs' claims are all based on state law, at the outset the Court must determine which law to apply to Plaintiffs' claims.  New Jersey's choice of law rules apply, as a federal court sitting in diversity must apply the forum state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 383 U.S. 487, 496 (1941).  New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws.  *P. V. v. Camp Jaycee*, 197 N.J. 132, 142-43, 962 A.2d 453 (2008).[4]  This

---

[4] Until the New Jersey Supreme Court's decision in *Camp Jaycee*, New Jersey used the "governmental interest" analysis.  The "most significant relationship" test now used "embodies

analysis, which must be performed on an issue-by-issue basis, is a two-step process.  *Id.* at 143.  The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies.  *Id.*  Second, if a conflict does exist, the Court must determine which state has the "most significant relationship" to the claim, by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action."  *Nikolin v. Samsung Elecs. Am., Inc.*, Civ. No. 10-1456, 2010 U.S. Dist. LEXIS 110942, at *9 (D.N.J. Oct. 18, 2010).

Plaintiffs argue that it is premature to conduct a proper choice of law analysis, as the Court does not yet have a full factual record.  Due to the factual inquiry that may be necessary to properly weigh the Restatement factors, "it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place."  *In re Samsung DLP Television Class Action Litigation*, Civ. No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009).  However, "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss."  *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009).  As such, courts in this Circuit have sometimes determined that the choice of law analysis in a putative class action can be done at the motion to dismiss stage.  *See, e.g., Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 n.5 (3d Cir. 2010); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, Civ. No. 08-5380, 2010 U.S. Dist. LEXIS 34584, at *2 (D.N.J. Apr. 8, 2010); *Knox v.*

---

all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration."  *Camp Jaycee*, 197 N.J. at 142 n.4.

*Samsung Electronics America, Inc.*, Civ. No. 08-4308, 2009 U.S. Dist. LEXIS 53685, at *2 (D.N.J. June 25, 2009).  Other times, however, Courts in this District have deferred the choice of law analysis until the class certification stage.  *See Harper*, 595 F. Supp. 2d at 490-91; *In re Samsung*, 2009 WL 3584352, at *3; *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004); *In re Hypodermic Products Antitrust Litig.*, Civ. No. 05-1602, 2007 U.S. Dist. LEXIS 47438, at *16 (D.N.J. June 29, 2007).

In order to decide whether choice of law analysis is appropriate at the motion to dismiss stage in this particular case, the Court will follow the guidance provided in *Harper*, and determine whether the choice of law issues "require a full factual record" or not.  595 F. Supp. 2d at 491.  Since choice of law analysis must be undertaken on an issue-by-issue basis, the Court will also determine whether or not to defer its choice of law decision on an issue-by-issue basis.  The factual record available at this time may be full enough for certain choice of law determinations but not for others.  Therefore, New Jersey's choice of law analysis will be addressed for each issue, and should the choice of law determination for that issue require a fuller factual record, the Court will defer its decision until such factual record is available.

### D.    Preemption Under FIFRA

Defendants first argue that Plaintiffs' claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 ("FIFRA"), as Plaintiffs' claims for relief seek to alter the EPA-approved labels and package inserts of

11

Defendants' Products.  FIFRA provides a comprehensive scheme for regulating labels used on pesticides such as Defendants' Products.  When a pesticide manufacturer applies to the EPA for registration of a pesticide product, the manufacturer "must submit a proposed label to [the] EPA as well as certain supporting data."  *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005) (citing 7 U.S.C. § 136a).  The EPA then determines what warnings or precautions must appear on the product's label, and notifies the manufacturer of its labeling decision.  7 U.S.C. § 136a(c).  Under FIFRA, the EPA is essentially given full control to regulate labels used on pesticides.  While state governments can regulate pesticide labeling in conjunction with the federal government, they are expressly prohibited from "impos[ing] or continu[ing] in effect any requirements for labeling or packaging in addition to or different from" those established by the federal government.  7 U.S.C. § 136v(b).  This includes "judge-made rules" in addition to statutes and regulations.  *Bates*, 544 U.S. at 443.  However, this preemption is limited in scope to judge-made requirements for "labeling or packaging," where said requirement is more than is required under FIFRA.  *Id.* at 444.

The Supreme Court's decision in *Bates* instructs courts as to what types of claims are preempted by FIFRA.  In *Bates*, the Supreme Court held that, "rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirement for labeling or packaging."  544 U.S. at 444 (finding that the

petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty were not pre-empted).  The Supreme Court further explained that "the proper inquiry calls for an examination of the elements of the common-law duty at issue," not an examination of the potential effects of imposing those common law requirements.  *Id.* at 445.  The Third Circuit, in examining Congress's purpose in passing FIFRA, additionally explains that Congress meant only to provide uniformity in labeling, and did not intend "to regulate sales literature generally and the legal obligations that can arise therefrom."  *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 217 (3d Cir. 2010).

If Plaintiffs' claims for (1) breach of implied warranty of merchantability, (2) breach of express warranty, (3) violation of the NJCFA, and (4) unjust enrichment amount to labeling requirements, they will be preempted by FIFRA.  First, as to Count Two, the Third Circuit has specifically held that FIFRA does not preempt claims based on breach of express warranty.  *See Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 490 (3d Cir. 2006) (holding that "FIFRA does not preempt claims based on theories of strict liability, negligent testing, and breach of express warranty").  Simply because success on a breach of express warranty claim may lead to a label change by Defendant does not mean the claim imposes a "requirement" within the meaning of FIFRA's preemption provision.  *Id.*  Similarly, Plaintiffs' breach of implied warranty of merchantability claim is also not preempted, as it only requires that the product itself be merchantable, not that Defendants label their products in any particular way.  The unjust

13

enrichment claim, as well, alleges only that the product Plaintiffs received is not the product they bargained for, and does not address any labeling requirement. Essentially, the only claim in danger of preemption is Plaintiffs' claim under the NJCFA as to Defendants Hartz and Summit.

The Third Circuit has recently addressed when a fraud claim under the NJCFA is preempted by FIFRA. *See Indian Brand Farms*, 617 F.3d 207. In *Indian Brand Farms*, the Third Circuit found that the plaintiffs' claim was not preempted as it was based on statements made by the defendant in a marketing brochure, which did not qualify as "labeling" under FIFRA. *Id.* at 218. Plaintiffs' NJCFA allegations here are that Defendants Hartz and Summit "marketed and continued to market [their] products to consumers as safe when used as intended, when they knew that the products posed substantial risk regardless of application and use." (Compl. ¶ 223.) Furthermore, Plaintiffs allege that "by selling their products to the general public, Defendants implicitly represented that such products were safe and would not cause harm to pets." (Compl. ¶ 224.) Like in *Indian Farms*, these allegations are not based on statements made on the product's label. Therefore, at least at this juncture, the Court finds that none of Plaintiffs' claims are preempted by FIFRA.

### E.    Subsumption of Counts One, Three and Four Under the New Jersey Products Liability Act

Defendants argue that Plaintiffs' theories of breach of implied warranty, unjust enrichment, and consumer fraud are not independently actionable, as under New Jersey

law, claims arising from harm caused by products can only be asserted under the New

Jersey Products Liability Act ("NJPLA").

### 1.    Choice of Law

While Defendants argue that Plaintiffs' claims are subsumed under the NJPLA,

the NPLA can only subsume claims that are governed by New Jersey law.  As discussed

above, the Court must apply New Jersey's "most significant relationship" test to

determine which state's law applies.  First, an actual conflict does exist as the NJPLA's

provisions are different than other states' product liability laws.  Second, under the

applicable Restatement provision, the state where the injury occurs is presumed to

govern, unless some other state can be shown to have a more significant relationship.

Restatement (Second) of Conflict of Laws, § 147.  Plaintiffs correctly state in their

opposition brief that "if Plaintiffs were actually asserting product liability claims, the

NJPLA would apply only to the claims of New Jersey plaintiffs."  (Pls.' Opp. Br. at 8

n.4.)  While Plaintiffs may challenge whether the applicable product liability acts

subsume their claims, they have not challenged the applicability of the law of the state

where each Plaintiff was injured to products liability issues.  Since no other state has been

shown to have a more significant relationship to any product liability issues here, no

further factual inquiry is necessary, and pursuant to the Restatement the Court will apply

law of each Plaintiff's home state.[5]  Since Defendants have not addressed subsumption

---

[5] Since the class has yet to be certified, the Court will apply the law of each of the named
Plaintiffs' home states at this stage.  *See Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d
644, 659 (3d Cir. 1998) (stating that "[u]ntil the putative class is certified, the action is one

arguments under any other states' product liability laws at this time, the Court will only address subsumption arguments under the NJPLA as to Plaintiff Marie Zolnowski's claims, as well as to any putative class members from New Jersey.

### 2.    The NJPLA Applied to New Jersey Plaintiffs' Claims

The NJPLA governs any "product liability action," which is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3).  "Harm" is defined in the statute as, "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph."  N.J. Stat. Ann. § 2A:58C-1(b)(2). Thus, the Third Circuit has determined that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview."  *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991).  If any of Plaintiff Marie Zolnowski's claims constitute a "product liability claim," they will be subsumed under the NJPLA.

Plaintiffs attempt to classify their claims as non-product liability claims by alleging only economic damages related to the price of the product as opposed to damages related to the harm caused by the product.  However, "[l]imiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the

---

between the [named plaintiffs] and the defendants.  Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs.")

PLA." *Vercelleno v. Gerber Prods. Co.*, Civ. No. 09-2350, 2010 U.S. Dist. LEXIS 9477, at \*20 (D.N.J. Feb. 3, 2010).  The New Jersey Supreme Court has expressly held that "[t]he language of the PLA represents a clear legislative intent that…the PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66 (N.J. 2008).  As such, regardless of how a claim is pleaded, where the *core issue* is the harmfulness of the product's chemicals, the claim must be pleaded as an NJPLA claim.  *Crouch v. Johnson & Johnson*, Civ. No. 09-2905, 2010 WL 1530152, at \*7 (D.N.J. Apr. 15, 2010).

Though Plaintiffs assert contract, quasi-contract, and consumer fraud claims, the issue underlying Plaintiffs' claims is that the chemicals in Defendants' products are dangerous and caused physical damage to Plaintiffs' property, in the form of harm to their pets' health.  *See Harabes v. The Barkery, Inc.*, 791 A.2d 1142, 1144 (N.J. Super. Ct. Law Div. 2001) (classifying pets as personal property).  This fits squarely within the NJPLA's definition of "harm" as "physical damage to property."  N.J. Stat. Ann. § 2A:58C-1(b)(2)(a).

While Plaintiffs point to various cases finding that the NJPLA does not subsume claims for economic damages resulting from harm to the product itself, these cases are inapplicable here.  (*See* Pls.' Opp. Br. at 10-11).   In those cases, the product itself was destroyed or harmed by some defect or problem with product.  *See Estate of Edward W. Knoster v. Ford Motor Co.*, 200 Fed. Appx. 106, 108 (3d Cir. 2006) (alleged gas pedal malfunction in a Ford Taurus led to crash and destruction of the product); *Shannon v.*

17

*Howmedica Osteonics Corp.*, Civ. No. 09-4171, 2010 WL 1492857 at *2 (D.N.J. Apr.

14, 2010) (knee insert product was allegedly damaged due to improper packaging);

*Marrone v. Greer & Polman Construction, Inc.*, 405 N.J. Super. 288, 297 (App. Div.

2009) (alleged defect caused exterior siding product itself to be damaged by rain and

moisture).  Here, Plaintiffs allegations are based on the harm caused to their pets by the

alleged defects in the Products, not based on any harm caused to the Products themselves.

 Finally, Plaintiffs cite to the New Jersey Appellate Division case *Wendling v.*

*Pfizer, Inc.*, No. L-348-04, 2008 WL 8333549 (N.J. App. Div. Mar. 31, 2008) for the

proposition that since Plaintiffs' claims allege affirmative misrepresentations by

Defendants, they are not subsumed.  (Pls.' Opp. Br. at 12.)  In *Wendling*, the plaintiffs

brought a claim under the NJCFA that a product claiming to control tapeworms in horses

failed to do so, causing harm to plaintiffs' horses from tapeworms that were insufficiently

treated.  The Appellate Division found that plaintiffs' claim was not subsumed by the

NJPLA because in *Wendling*, "it was not the product itself that caused the harm, but

allegedly its misleading promotion."  *Wendling*, 2008 WL 8333549, at *8.  Here,

Plaintiffs are not alleging that Defendants' Products failed to kill fleas and ticks, causing

harm to Plaintiffs' pets because the fleas and ticks went untreated.  Instead, Plaintiffs are

alleging that the product is unusable as it harmed their pets in the process of successfully

killing the fleas and ticks as promised.  Simply "articulating a claim in terms of pure

economic harm where the core issue is the potential injury arising as a consequence of

the products' allegedly harmful chemicals" does not obviate the NJPLA's reach.

*Vercelleno*, 2010 U.S. Dist. LEXIS 9477, at *20.  Therefore, Plaintiff Marie Zolnowski's breach of implied warranty, unjust enrichment and consumer fraud claims are subsumed under the NJPLA, as "irrespective of the theory underlying the claim," the core issue in Plaintiff's claims is "harm caused by a product." N.J. Stat. Ann. § 2A:58C-1(b)(3). While these claims fail as pleaded, the Court is making no determination at this juncture as to whether Plaintiffs can successfully state these claims under the requisite product liability statutes.  As such, while these claims are dismissed, the Court will allow Plaintiffs the opportunity amend the Complaint to plead them as product liability causes of action instead.

>    **F.     Counts One and Two – Breach of Implied Warranty of**
>    **Merchantability and Breach of Express Warranty**

Though Count One is subsumed under the NJPLA as to any New Jersey Plaintiffs, the claim for breach of implied warranty of merchantability remains as to all non-New Jersey Plaintiffs.  Since claims for breach of express warranty are expressly preserved by the NJPLA, Count Two is not subsumed for any Plaintiffs.  Defendants contend that Count One fails to state a claim because the products are inherently dangerous, and cannot be made safer without defeating the intended purpose of the products.  Defendants also contend that Count Two fails to state a claim because Plaintiffs have failed to allege any express warranty that was breached.  Even if the statements cited by Plaintiffs constitute express warranties that were breached, Defendants further argue that the Count still fails to claim that they were part of the "basis of the bargain" for the product.  *New*

*Hope Pipe Liners, LLC v. Composites One, LCC*, Civ. No. 09-3222, 2009 U.S. Dist.

LEXIS 111217, at *15 (D.N.J. Nov. 25, 2009).

   **1.**  **Choice of Law**

   Under the first step of New Jersey's "most significant relationship" test, courts

have agreed that state laws regarding breach of express and implied warranty vary

widely, especially as to whether reliance or privity of contract must be demonstrated to

state such a claim. *See Payne v. FujiFilm U.S.A., Inc.*, Civ. No. 07-385, 2010 U.S. Dist.

LEXIS 52808, at *27-28 (D.N.J. May 28, 2010). Under the second step, since breach of

express and implied warranty claims sound in contract, courts look to Section 188 of the

Restatement to determine which state's law applies. The Restatement requires courts to

consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the

place of performance, (4) the location of the subject matter of the contract, and (5) the

domicile, residence, nationality, place of incorporation and place of business of the

parties." Restatement (Second) of Conflict of Laws § 6; *Agostino v. Quest Diagnostics,*

*Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009). Additionally, courts look to the more general

factors set forth in Section 6 of the Restatement: (1) interests of interstate comity, (2)

interests of the parties, (3) interests underlying the field of law, (4) interests of judicial

administration, and (5) competing interests of the states. Restatement (Second) of

Conflict of Laws § 6; *P. V. v. Camp Jaycee*, 962 A.2d 453, 463 (N.J. 2008).

   Unlike the more straight forward choice of law analysis required for a products

liability claim, applying the factors necessary to determine choice of law for a contract or

quasi-contract claim is a very fact-intensive inquiry.  Courts in this District have found in some cases that a choice of law inquiry as to contract-based claims is premature at the motion to dismiss stage.  *See In re K-Dur Antitrust Litigation,* 338 F. Supp. 2d 517 (D.N.J. 2004) (postponing choice of law analysis, including as to a breach of contract claim, to class certification stage); *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing choice of law analysis as to breach of express and implied warranty claims "until the parties present a factual record full enough").  The Court finds that, like in *Harper*, the factual record here is not yet full enough to make a choice of law determination as to Plaintiffs' breach of express warranty claim.  However, the Court must still determine whether Plaintiffs have succeeded in stating a claim in order for that claim to survive the pending motions to dismiss.  Since Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard.  *See Harper*, 595 F. Supp. 2d at 491 (examining the claims under the assumption that New Jersey law governs as that is what the plaintiffs presented, where the choice of law analysis was not yet proper).

### 2.     Breach of Implied Warranty of Merchantability

A warranty of merchantability is implied in every contract for the sale of goods. *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009) (citing N.J. Stat. Ann. § 12A:2-314)).  New

Jersey has adopted the Uniform Commercial Code ("UCC") which provides, in pertinent

part, that for goods to be merchantable they must at least:

> (a) pass without objection in the trade under the contract description; and…
>
> (c) [be] fit for the ordinary purposes for which such goods are used; and…
>
> (f) conform to the promises or affirmations of fact made on the container or label
>
> if any.

N.J. Stat. Ann. § 12A:2-314; UCC § 2-314.  Essentially, "[i]n order for the implied

warranty of merchantability to be breached, the product at issue must have been defective

or not fit for the ordinary purpose for which it was intended."  *In re Toshiba*, 2009 WL

2940081, at *16.  Plaintiffs allege that Defendants' Products are unmerchantable, and that

all Plaintiffs and members of the putative class are entitled to revoke their acceptance of

these goods.  (Compl. ¶¶ 208-209.)  As such, Plaintiffs allege that they are entitled to a

refund and any consequential damages resulting from their purchases.  (Compl. ¶¶ 210-

211.)

Defendants Hartz and Summit argue that they are protected by New Jersey's

affirmative defenses, because they have provided adequate warning pursuant to N.J. Stat.

Ann. § 1A:58C-3a(3), and because danger is "an inherent characteristic of the product"

that is "known to the ordinary consumer."  N. J. Stat. Ann. § 2A:58C-3a(2).  Hartz

contends that the warning provided on its product[6] was adequate to alert consumers to

---

[6] The warning on Hartz's product states as follows: "HAZARDS TO
ANIMALS:…Sensitivities may occur after using ANY pesticide product for pets…Seller makes

potential dangers inherent in flea and tick medication, and that the product cannot be made safer as the dangerous pesticide ingredients are necessary to kill fleas and ticks. (Hartz's Moving Br. at 37-39.)  Summit too argues that a product "is not defective if the harm stems from an inherent characteristic of the product and would be recognized by an ordinary person who uses the product."  (Summit's Moving Br. at 20.)

However, the defenses cited by Defendants are affirmative defenses to be used "in any product liability action…for harm allegedly caused by a product that was designed in a defective manner." N. J. Stat. Ann. § 2A:58C-3a.  Defendants are incorrect that a claim of breach of implied warranty of merchantability must rely on the finding of a product defect.  Instead, the UCC, as adopted by New Jersey, specifically states that an implied warranty of merchantability ensures that goods sold are "fit for the ordinary purposes for which such goods are used."  N.J. Stat. Ann. § 12A:2-314(f); *Henderson v. Volvo Cars of N. Am., LLC*, Civ. No. 09-4146, 2010 U.S. Dist. LEXIS 73624, at *28 (D.N.J. July 21, 2010) (internal citation omitted).  This does not require a showing that the product was defective, and as such, Defendants' product liability defenses are not sufficient to require that Plaintiffs' claim be dismissed.

Plaintiffs have pleaded enough facts to state a breach of implied warranty claim under New Jersey law at this time.  They claim that the flea and tick medications, in the form manufactured by Defendants, are unfit as they do not safely kill fleas and ticks.  As

---

no warranty, expressed or implied, concerning the use of this product other than indicated on the label."  (Hartz's Moving Br., Ex. C, at 2.)

23

such, insofar as no choice of law determination has yet been made, under Rule 12(b)(6) Plaintiffs' allegations state a breach of implied warranty of merchantability claim.[7]

### 3.     Breach of Express Warranty

Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. *New Hope Pipe Liners*, 2009 U.S. Dist. LEXIS 111217, at *15; N.J. Stat. Ann. § 12A:2-313.  However, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  N.J. Stat. Ann. § 12A:2-313(2).  Additionally, statements that are nothing more than mere puffery are not considered specific enough to create an express warranty.  *In re Toshiba*, 2009 U.S. Dist. LEXIS 82833, at *48-49 (dismissing a breach of warranty claim based on defendant's statement that HD DVD Players were for "Today, Tomorrow, and Beyond," since the statement is just "puffery").  Finally, courts have noted that "whether a given statement constitutes an express warranty is normally a question of fact for the jury."  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No. 03-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. 2008); *see also Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645, 801 A.2d 361 (App. Div. 2002) ("Whether the advertisements contained material

---

[7] Other than for New Jersey Plaintiffs, whose claims are subsumed by the NJPLA.

24

misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact.").

Plaintiffs allege that Defendants "sold each of their products with an express written warranty, including affirmations and representations as to the results that may be reasonably expected from the ordinary usage of the products." (Compl. ¶ 213.) Furthermore, Plaintiffs allege that "Defendants' written warranties expressly stated that the products could be used on the types of pets set forth in the labels and that they were safe for use on that type of pet." (Compl. ¶ 214.)

Defendants allege that these statements do not adequately identify express warranties to state a claim under New Jersey law. Specifically, Defendants contend that Plaintiffs' pleading fails to identify the actual language or source of any alleged warranty. The Court agrees with Defendants. Since Plaintiffs' allegations are simply "bald assertions" that fail to identify specific affirmations or promises by Defendants,[8] the claim as pleaded cannot survive a motion to dismiss. *See Simmons v. Stryker Corp.*, Civ. No. 08-3451, 2008 U.S. Dist. LEXIS 93306, at *5 (D.N.J. Nov. 17, 2008) (dismissing a claim that was "devoid of any 'factual matter' to support the existence of an express warranty"); *Parker v. Howmedica Osteonics Corp.*, Civ. No. 07-2400, 2008 U.S. Dist. LEXIS 2570, at *21 (D.N.J. Jan. 14, 2008) (general references to "press releases" and "assurances of safety," as opposed to specific statements, cannot survive a motion to

---

[8] The Court does recognize that Plaintiffs refer to specific statements by Defendants in their Opposition Brief. (Pls.' Opp. Br. at 17-18 n. 7-8.) However, these statements were not identified or referred to in Plaintiffs' allegations in the Complaint. Therefore, the Court will not address the sufficiency of these statements at this time.

dismiss); *Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 U.S. Dist. LEXIS 60569, at *24-25 (N.D.Ill., July 25, 2008) (claim dismissed where plaintiff failed to specify any particular affirmation or promise by defendant).  Thus, the Court finds Plaintiffs' breach of express warranty claim in this case to be inadequately pled and Count Two is dismissed without prejudice.  If Plaintiffs wish to amend the Complaint to allege facts sufficient to support the breach of express warranty claim, they may do so within thirty days in light of this Opinion.[9]

### G.    Count Three – New Jersey Consumer Fraud Act

Count Three, alleging a violation of the NJCFA against Defendants Hartz and Summit,[10] remains as to all non-New Jersey Plaintiffs while it is subsumed by the NJPLA as to all New Jersey Plaintiffs.  Defendants contend that since Plaintiffs' home state laws govern consumer fraud claims, these non-New Jersey Plaintiffs cannot state an NJCFA claim.  Defendants further argue that Plaintiffs have failed to state a claim under the NJCFA because they have failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

### 1.    Choice of Law

Under the first step of New Jersey's choice of law analysis, courts in this District have recognized that the NJCFA and consumer protection laws of other states clearly

---

[9] Defendants also argue that Plaintiffs have failed to properly plead that the alleged warranties were the "basis of the bargain."  However, since the Court finds that Plaintiffs have failed to properly plead any express warranties, this argument need not be addressed at this time.

[10] Plaintiffs only allege their NJCFA claim against Defendants Hartz and Summit, as they are both headquartered in New Jersey.  (Compl. ¶¶ 222-228.)

conflict.  *See Payne v. FujiFilm U.S.A., Inc.*, Civ. No. 07-385, 2010 U.S. Dist. LEXIS

52808, at *20 (D.N.J. May 28, 2010); *Agostino v. Quest Diagnostics Inc*., 256 F.R.D.

437, 461 (D.N.J. 2009); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 247 (D.N.J.

2007).  For the second step of the analysis, courts look to Section 148 of the Restatement

(Second) of Conflict of Laws, which applies to claims involving fraud or

misrepresentation.  Under Section 148(1) of the Restatement:

> When the plaintiff has suffered pecuniary harm on account of his reliance
> on the defendant's false representations and when the plaintiff's action in
> reliance took place in the state where the false representations were made
> and received, the local law of this state determines the rights and liabilities
> of the parties unless, with respect to the particular issue, some other state
> has a more significant relationship under the principles stated in § 6 to the
> occurrence and the parties, in which event the local law of the other state
> will be applied.

Restatement (Second) of Conflict of Laws § 148.  Essentially, Section 148(1) applies a

presumption that each plaintiff's state's laws should apply where the false representations

were made and relied upon in the same state.  *See Agostino*, 256 F.R.D. at 462

(determining that Section 148(1) "recognizes that the state in which a prospective

plaintiff acted in reliance on a defendant's fraud is presumed to have the predominant

relationship to the parties and the issues in the litigation").  In cases with facts similar to

this one, some courts have applied Section 148(1)'s presumption.  *See Id.*; *Nafar v.

Hollywood Tanning Sys.*, 339 Fed. Appx. 216, 220-221 (3d Cir. 2009) (directing the

district court on remand to apply the analysis in *Agostino*); *Laney v. Am. Std. Cos.*, Civ.

No. 07-3991, 2010 U.S. Dist. LEXIS 100129, at *69 (D.N.J. Sept. 23, 2010) (applying

Section 148(1) because the allegedly fraudulent warranty was issued to each consumer in their home states at the time of purchase).

If Section 148(1) is found not to apply because the false representations were made in a state other than where Plaintiffs relied on them, then Section 148(2) applies. Section 148(2) requires courts to weigh the following contacts:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of the Conflict of Laws § 148(2).  In analyzing a consumer fraud claim, some courts have found that the alleged misrepresentations were made at the Defendant's headquarters, not at consumers' home states, and have thus applied Section 148(2) instead of Section 148(1).  *See In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 66 (finding that the alleged misrepresentations "took place" in New Jersey because Defendants marketing, promotion and planning team were in New Jersey); *see also Cooper v. Samsung Elecs. Am., Inc.,* 374 Fed. Appx. 250, 255 (3d Cir. 2010) (not precedential) (applying Section 148(2) to an NJCFA claim, but quickly finding that the Plaintiff's home state's law applied because it was the state in which the product was "marketed, purchased, and used"); *Nikolin v. Samsung Elecs. Am., Inc.,* Civ. No. 10-

1456, 2010 U.S. Dist. LEXIS 110942, at *11-*14 (D.N.J. Oct. 18, 2010) (applying Section 148(2) and finding that Plaintiff's home state's law applied because Plaintiff is a resident, the information was received there, and the product was purchased and used there).

Here, Plaintiffs have alleged that Defendants' representations were made in New Jersey where Defendants' headquarters are located.  (Compl. ¶ 228.)  As such, the Court will apply Section 148(2).  The factual record is complete enough at this time to show that, accepting all of the facts as pleaded by Plaintiffs as true, the factors weigh in favor of applying the law of Plaintiffs' home states.  Plaintiffs received and relied upon the alleged misrepresentations in their home states, the product is located in the Plaintiffs' home states, and the performance of the contract was rendered in Plaintiffs' home states. Balancing all these factors in favor of Plaintiffs' home states against the fact that Defendants' headquarters are located in New Jersey, the Court finds that the law of each Plaintiff's home state has the "most significant relationship" to Plaintiffs' consumer fraud action.  *See Nikolin*, 2010 U.S. Dist. LEXIS 110942, at *12 (finding at the motion to dismiss stage that the law of each plaintiff's home state has the most significant relationship, as "mere allegations that the unlawful conduct emanated from New Jersey did not outweigh the substantial ties to plaintiffs' home states"); *Cooper*, 374 F. Appx. at 255 (finding at the motion to dismiss stage that a consumer fraud claim bears the most significant relationship with the state in which the product was "marketed, purchased, and used"); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, Civ. No. 08-5380, 2010

U.S. Dist. LEXIS 34584, at *4 (D.N.J. Apr. 8, 2010) (finding at motion to dismiss stage that allegation that product was designed in New Jersey "does not outweigh other, more significant , ties" to plaintiff's home state); *In re Philips/Magnavox TV Litig.*, Civ. No. 09-3072, 2010 U.S. Dist. LEXIS 91343, at *26-28 (D.N.J. Sept. 1, 2010) (analyzing the Section 148(2) factors at the motion to dismiss stage and finding that the law of each plaintiff's home state applies). *But see In re Mercedes-Benz*, 257 F.R.D. at 68-69 (finding that the law of the state of the Defendant's headquarters applies). Since the Court has determined that Plaintiffs' consumer fraud claims must be brought under their home states' laws, only New Jersey Plaintiffs may state an NJCFA claim. However, as determined above, Count Three has been dismissed as subsumed by the NJPLA for all New Jersey Plaintiffs. Therefore, Plaintiffs have failed to state a claim under the NJCFA.

### 2.     Federal Rule of Civil Procedure 9(b)

Hartz's motion to dismiss also briefly addresses whether Plaintiffs' NJCFA claim could be construed to state a claim for relief under the consumer fraud acts of each Plaintiffs' home states. (Hartz's Moving Br. at 25-26.) While the Court declines to consider whether the claim can be construed under each state's individual consumer fraud statute, the Court will consider generally whether Plaintiffs' claim has satisfied Federal Rule of Civil Procedure 9(b).

Consumer fraud claims are subject to the heightened pleading standards of Rule 9(b), which require that plaintiffs "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, in order to satisfy the Rule 9(b) specificity

requirement, Plaintiffs must either plead the "date, place or time" of the fraud, or substantiate their claims through alternative means of precision. *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (to satisfy Rule 9(b), a plaintiff must "inject precision or some measure of substantiation into a fraud allegation").

Plaintiffs have failed to provide the requisite level of substantiation in their consumer fraud claim. Plaintiffs do not specifically identify the time, place, or manner of the alleged fraud, nor do they link Defendants' alleged marketing and advertisement fraud with their purchases and resulting injuries. Rather, Plaintiffs make generalized assertions regarding their use of Defendants' products. (*See* Compl. ¶ 226.) Plaintiffs fail to set forth, other than in vague terms, "who made a representation to whom and the general content of the representation." *Lum*, 361 F.3d at 224. Finally, Count Three is alleged against Hartz and Summit jointly, and fails to distinguish between the allegedly fraudulent actions of each Defendant. *See Hale v. Stryker Orthopaedics*, Civ. No. 08-337, 2009 WL 32157, at *6 (D.N.J. Feb. 9, 2009) (Martini, J.) ("Collectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b).")

Consequently, even if the Court were to construe Plaintiffs' claims as stated under the applicable consumer fraud statute of each Plaintiff's home state, Count Three must still be dismissed as the allegations as pleaded fail to satisfy Rule 9(b)'s heightened

pleading requirement.  Thus, Count Three is dismissed without prejudice, and should Plaintiffs choose to amend the Complaint to state a claim under the consumer fraud statutes of Plaintiffs' home states other than New Jersey, such amendment must also conform to Rule 9(b)'s pleading requirements.

### H.      Count Four – Unjust Enrichment

Like Counts One and Three, Count Four is subsumed as to any New Jersey Plaintiffs but remains as to all non-New Jersey Plaintiffs.  Defendants contend that the unjust enrichment claim still fails, as Plaintiffs have not established a sufficiently direct relationship between themselves and Defendants.

### 1.      Choice of Law

Under the first step of New Jersey's "most significant relationship" test, the Court must determine whether there is an actual conflict between the laws of the different states.  *P. V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008).  Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state.  *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (finding that any differences under the laws of the various states are "not material and do not create actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009) (concluding that "there are no actual conflicts among the laws of unjust enrichment"); *Pa. Employee, Benefit Trust Fund v. Zeneca, Inc.*, Civ. No. 05-75, 2010 WL 1816234, at *13 (D. Del. May 6, 2010) (Court determined that "the basic elements required under the relevant states' [unjust enrichment] laws do not create an actual conflict"); *Powers v.*

32

*Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (examining the unjust

enrichment laws of the 50 states and concluding that, "[a]lthough there are numerous

permutations of the elements of the cause of action in the various states, there are few

real differences").  Since no actual conflict exists, New Jersey law will be applied to all

Plaintiffs' unjust enrichment claim.

### 2.      Unjust Enrichment

Plaintiffs allege that since Defendants profited from the sale of their Products even

though said Products caused Plaintiffs to incur damages, Defendants were unjustly

enriched by those profits since Plaintiffs received no benefit in return.  (Compl. ¶¶ 231-

32.)  Plaintiffs therefore allege that they are entitled to recover the amount of Defendants'

unjust enrichment.  (Compl. ¶ 234.)  "Generally, to claim unjust enrichment, a plaintiff

must allege that '(1) at plaintiff's expense (2) defendant received benefit (3) under

circumstances that would make it unjust for defendant to retain benefit without paying for

it.'"  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No. 03-4558, 2008 U.S.

Dist. LEXIS 73690, at *63 (D.N.J. Sept. 3, 2008) (quoting *In re K-Dur Antitrust Litig.*,

338 F. Supp. 2d 517, 544 (D.N.J. 2004)).  Since a plaintiff must confer a benefit on the

defendant to support an unjust enrichment claim, this element has been interpreted by

New Jersey courts as a requirement that "the plaintiff allege a sufficiently direct

relationship with the defendant to support the claim."  *Nelson v. Xacta 3000 Inc.*, Civ.

No. 08-5426, 2009 U.S. Dist. LEXIS 109580, at *7 (D.N.J. Nov. 24, 2009) (citing

*Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009)); *see also*

*Cooper v. Samsung Elec.*, Civ. No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *30

(D.N.J. Sept. 29, 2008) (dismissing an unjust enrichment claim where consumer's

purchase was through a retailer, as there was no relationship conferring any direct benefit

on the manufacturer).  When consumers purchase a product from a third party, they

confer a benefit on that third party, not on the manufacturer.  *See Alin v. Ain. Honda*

*Motor Co., Inc.*, Civ. No. 08-4825, 2010 WL 1372308, at *14-15 (D.N.J. Mar. 31, 2010);

*Nelson*, 2009 U.S. Dist. LEXIS 109580, at *7; *In Re Ford Motor Co. E-350 Van Prods.*

*Liab. Litig. (No. II)*, Civ. No. 03-4558, 2010 WL 2813788, at *33 (D.N.J. July 9, 2010).

Defendants argue that Plaintiffs have not established a sufficiently direct

relationship between themselves and Defendants.  (Hartz's Moving Br. at 39.)  Since

Plaintiffs appear to have purchased Defendants' products through a third party retailer or

a veterinarian,[11] they cannot rightfully expect any remuneration from Defendants since

they never directly conferred a benefit on Defendants.  The facts alleged here are almost

identical to the facts in *Cooper v. Samsung*: Plaintiffs are alleging that they are

unsatisfied with purchases from retailers, yet they want their money returned by the

manufacturer.  2008 U.S. Dist. LEXIS 75810, at *29-31.  Applying the analysis provided

in *Cooper*, this type of transaction does not constitute conferring a benefit on Defendants

within the meaning of "unjust enrichment" under New Jersey doctrine.  *Cooper*, 2008

---

[11] Some Plaintiffs specifically allege that they purchased the Products from a third party retailer such as a grocery store, Pet Smart, or Wal-Mart.  (*See* Compl. ¶¶ 55, 83, 90, 115, 121, 144.)  Others state that they received the product from their veterinarian.  (*See* Compl. ¶¶ 65, 109).  Therefore, at this time the Court will presume that all Plaintiffs received the product from a third party, as no Plaintiffs have alleged that they purchased the Products directly from Defendants.

U.S. Dist. LEXIS 75810, at *30.  Since Plaintiffs have failed to allege a sufficiently direct relationship between themselves and Defendants, their unjust enrichment claim is dismissed without prejudice.

## III.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are **GRANTED** as to Counts Two, Three and Four as to all Plaintiffs, and Counts Two, Three and Four are **DISMISSED WITHOUT PREJUDICE**.  Defendants' motions to dismiss are also **GRANTED** as to Counts One, Three and Four as to New Jersey Plaintiffs only.  Counts One, Three and Four as to New Jersey Plaintiffs are **DISMISSED** as subsumed by the NJPLA.  Defendants' motions to dismiss as to Count One are **DENIED** as to all non-New Jersey Plaintiffs.  Defendant Sergeant's motion to dismiss the Complaint pursuant to Rule 12(b)(2), or in the alternative to transfer, is **DENIED**.  An Order follows this Opinion.

 s/ William J. Martini                     
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26, 2011**